IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| JEANA M. GILBERT, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 06-1677-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| ─────────────────────── | ) | |

James S. Coon
Kimberly K. Tucker
Swanson, Thomas & Coon
820 SW Second Avenue, Suite 200
Portland, Oregon  97204

       Attorneys for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon

Page 1 - OPINION AND ORDER

Britannia I. Hobbs
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204-2904

Richard A. Morris
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

       Attorneys for Defendant

KING, Judge:

Plaintiff Jeana Gilbert brings this action pursuant to section 205(g) of the Social Security

Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and

supplemental security income benefits ("SSI").  I reverse the decision of the Commissioner and

remand for a finding of disability.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

cause death or to last for a continuous period of at least twelve months.  42 U.S.C.

§§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and

1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for

determining if a person is eligible for either DIB or SSI due to disability.  The claimant has the

burden of proof on the first four steps.  Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir.

2001); 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner determines whether the

claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity,

disability benefits are denied.  Otherwise, the Commissioner proceeds to step two and determines

whether the claimant has a medically severe impairment or combination of impairments.  A

severe impairment is one "which significantly limits [the claimant's] physical or mental ability to

do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not

have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine

whether the impairment is equivalent to one of a number of listed impairments that the

Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R.

§§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments,

the claimant is conclusively presumed to be disabled.  If the impairment is not one that is

presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the

impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

**THE ALJ'S DECISION**

The ALJ found that Gilbert had severe impairments of a major depressive disorder, idiopathic hypersomnia,[1] obesity, and a history of marijuana abuse.  However, the ALJ also found that these impairments, either singly or in combination, were not severe enough to meet or medically equal the requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations.  The ALJ concluded that Gilbert's statements on the intensity, persistence, and limiting effects of her symptoms were not entirely credible.  After reviewing the record, the ALJ found that Gilbert had no exertional limitations but her residual functional capacity was limited in that she was only able to understand and sustain simple, routine and repetitive tasks which involve limited social interactions.  Based on vocational expert testimony, the ALJ found that Gilbert could work as a sporting good assembler and electronics worker and was consequently not disabled under the Act.

**FACTS**

Gilbert alleges that she has been disabled since January 9, 2003, when she found out that one of her daughters was sexually abused.  Gilbert, who was 31 years old at the time of the opinion, has an associate degree in business management, and has worked as a data entry clerk and general clerk.  She lives in an apartment with her two children.  Three or four days a week, a friend comes to help Gilbert with the housework, to shop, to prepare 80% of the meals, and to take care of the children.

---

[1]  "Idiopathic hypersomnia is excessive sleeping without obvious cause.  It differs from narcolepsy in that idiopathic hypersomnia does not involve suddenly falling asleep or losing muscle control associated with strong emotions (cataplexy)."  Medline Plus, http://www.nlm.nih.gov/medlineplus/ency/article/000803.htm (last visited Mar. 5, 2008).

Gilbert has taken a variety of psychiatric medications to alleviate her depression and anxiety and a stimulant to alleviate her daytime sleepiness. Up until six months before the hearing, she also used marijuana to reduce her anxiety, with the amount in dispute. Gilbert sleeps 10 to 12 hours a night and takes 2 naps a day for about 2 hours each, one starting about 10:00-10:30 AM and the second starting at 5:00-6:00 PM. She complains that even after sleeping for 12 hours, she feels like she has not slept in days. When Gilbert is tired, she gets very emotional, cries, and is easily frustrated.

## DISCUSSION

Gilbert contends that the ALJ erred in rejecting the opinion of Dr. Rich that Gilbert could not engage in full time competitive employment. Gilbert contends that the ALJ gave no reasons other than that Dr. Rich is not Gilbert's treating doctor and that the record contains conflicting opinions. According to Gilbert, the ALJ's first reason to reject the opinion–because Dr. Rich is not a treating physician–is factually inaccurate and legally insufficient. She also argues that the ALJ's reference to evidence discussed in greater detail later in the ALJ's opinion does not provide the required specific and legitimate reasons to reject the opinion.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the

opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. Id. at 831. Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by and are consistent with other evidence in the record. Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999).

I agree with Gilbert that Dr. Rich should be considered a treating rather than an examining physician in that he saw Gilbert five times over nearly a year prior to giving his opinion: for a first consultation on April 13, 2005; for a polysomnogram and multiple sleep latency testing on June 26-27, 2005; for consultation on October 10, 2005; for a polysomnogram and multiple sleep latency testing on November 9-10, 2005; and for an office visit on March 6, 2006. The standard for rejecting the opinion of either type of physician, however, is the same.

I disagree with Gilbert's contention that the ALJ only relied on two reasons for rejecting Dr. Rich's opinion, namely, her interpretation of Dr. Rich's status and a general statement without detail that the record contains conflicting opinions. The ALJ is not required to group all reasons for rejecting a doctor's opinion into a single paragraph. The inconsistencies noted by the ALJ throughout the opinion can be used to support a rejection if the analysis within them is correct.

On April 20, 2006, Dr. Rich sent a letter to Gilbert's counsel discussing at length his opinion of Gilbert's condition. He based the opinion on two procedures, a polysomnogram completed at night and a multiple sleep latency test which consists of a series of structured naps

during the day.  Dr. Rich had both tests performed a second time because Gilbert's toxicology

screen during the first test showed marijuana in her system which could affect the validity of the

results.  Dr. Rich stated, in part:

> Unfortunately, idiopathic hypersomnia has proven to be often difficult to treat adequately.  Medication is the only option and for many individuals they may prove resistant to one or more of these agents.  In some individuals medication may work for a while, and then can become ineffective as tolerance develops. Ms. Gilbert appears to be an individual who develops tolerance very quickly, a phenomenon termed tachyphylaxis.  Both Provigil and Concerta have been tried, both with a transient positive response.  In some of these individuals adequate control may be obtained by a rotation of medications.  I've had to use intervals as short as 2 weeks.  Finding an effective medication régime can prove quite challenging, and may take as much as a year.

> A question was raised regarding the effects of antidepressants on her her [sic] condition.  Antidepressant medications will not correct this disorder.  This disorder affects physiological alertness and is not a primary mood disorder. Certainly, individuals who have this disorder may become depressed, largely as a result of the effects that it can have on the course of their lives.  Antidepressant agents may help them to feel better from the standpoint of their mood, but will not correct the pathological sleepiness.  Depression, if present, can make it more difficult to achieve symptom control for the idiopathic hypersomnia, as well.

> In summary, the objective testing completed clearly establishes that Ms. Gilbert has idiopathic hypersomnia.  It is physiologically severe.  Medication, thus far, has not adequately controlled her condition in part due [to] tachyphylaxis. Ms. Gilbert does appear to be depressed and this complicates the treatment of her condition.  Her need for naps on a daily basis up to 2 hours at a time, along with problems with attention concentration are central issues here.  Given the degree of daytime sleepiness symptoms that she experiences, in my considered opinion, I do not believe that Ms. Gilbert could sustain employment in a competitive work environment on a full-time basis until an effective medication régime has been found.

Tr. 298-99.

The ALJ believed that Dr. Rich's opinion was inconsistent with the totality of the medical

evidence and suggested that the doctor had inadequately reviewed Gilbert's medical record.  The

Page 8 - OPINION AND ORDER

ALJ listed Gilbert's admitted daily activities of housework, shopping, and attending group therapy and found them quite involved. These activities could be completed, however, around the two-hour nap that Dr. Rich believes Gilbert requires. It is also clear from the record that Gilbert's friend provides significant help to her and is paid by the state for 15 hours of childcare a month. Moreover, the friend lives in Gilbert's home several days a week and provides help in addition to the time for which she is paid. The friend receives room and board in return for the extra duties.

The ALJ then considered the evidence of Gilbert's daytime sleepiness. He noted that the condition is often described in the record as grogginess or sleepiness, that Gilbert does not fall asleep suddenly, and that she has trouble falling asleep when she lies down during the day. The ALJ states that Dr. Rich indicated in a progress note that the sleepiness responded well to the medication. Although this was true for a short period, Dr. Rich explained in his letter quoted above that the response was only transient, a fact that the chart notes support as the physicians tried two medications which both became ineffective in a matter of weeks. The ALJ ignored this contrary evidence. The ALJ's conclusion that Gilbert's idiopathic hypersomnia results in only minimal limitations, and her rejection of Dr. Rich's opinion, is not based on specific and legitimate reasons supported by substantial evidence in the record. Thus, I find that the ALJ improperly rejected Dr. Rich's opinion.

The court has the discretion to remand the case for additional evidence and findings or to award benefits. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability

can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. Id. If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence. Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000).

The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the Ninth Circuit, however. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003). The court has the flexibility to remand to allow the ALJ to make further determinations, including reconsidering the credibility of the claimant. Id. On the other hand, "in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).

Until Gilbert's physicians find a medication régime which stays effective over a significant period time, Gilbert needs a long nap each day, as explained by Dr. Rich. Even when not napping, she is described as groggy, hardly indicative of someone who is able to function at work. I conclude that it is clear from the record that Gilbert is disabled under the Act and remand for a finding of disability.

///

///

Page 10 - OPINION AND ORDER

**CONCLUSION**

The decision of the Commissioner is reversed. The case is remanded for a finding of disability.

IT IS SO ORDERED.

Dated this _____18th_____ day of March, 2008.

   _/s/ Garr M. King_____
Garr M. King
United States District Judge